489 So.2d 966 (1986)
STATE of Louisiana
v.
Edward L. SMITH.
No. KA-4392.
Court of Appeal of Louisiana, Fourth Circuit.
May 15, 1986.
Rehearing Denied June 18, 1986.
*967 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Susan Scott Hunt, Asst. Dist. Atty., New Orleans, for plaintiff-appellee State of La.
Charles T. Williams, New Orleans, for defendant-appellant Edward L. Smith.
Before REDMANN, C.J., and KLEES and LOBRANO, JJ.
KLEES, Judge.
Edward L. Smith was charged by bill of information filed August 27, 1981, with a violation of R.S. 40:969, to wit: possession of Talwin and Pentazocine. On June 14, 1982, a jury found the defendant guilty as charged. The court sentenced him to five years at hard labor and imposed a fine of $5,000.00. Under C.Cr.P. Art. 893(C), the five year sentence was suspended and defendant was placed on five years active probation. As a special condition of the probation, defendant was ordered to pay an additional $5,000.00 to the Criminal Court Operation Fund, in accordance with C.Cr.P. Art. 895.1 B(2). On November 5, 1984, the court revoked defendant's probation and ordered the original sentence to be made executory.
The defendant's motion for appeal was granted on November 8, 1984.[1]
FACTS:
On August 11, 1981, Sgt. John Evans received information from a reliable informant that a large black male, wearing short pants and driving a brown Cutlass, was in the area of Olive and Eagle Streets, and was selling drugs. The informant further reported that he had witnessed several transactions in the same area. Arriving at the intersection of Olive and Eagle Streets, the officers set up surveillance. They observed a two toned, brown and tan, Cutlass, and witnessed a person attempting to hand money to the driver. When the person spotted the officers he turned and walked away, placing the money back into his pocket.
The Cutlass began to move and Sgt. Evans then motioned the driver to pull over. He went to the vehicle, identified himself and asked the driver for his license. The driver exited from his vehicle and told the officer he did not have his license because *968 he lost his wallet. A second officer, Brady, walked to the front of the vehicle and noticed a revolver on the front passenger seat. The driver, defendant Edward Smith, was arrested for driving without a license, and the gun was retrieved. After contacting N.C.I.C., it was determined that the revolver was stolen. At this point, the defendant was charged with possession of stolen property, and a search of the car was conducted. Under the driver's seat was a band aid box containing Talwin, and a search of the glove compartment, disclosed a paper bag containing Talwin and Pentazocine. Defendant was subsequently arrested for distribution of Talwin and Pentazocine, and was transported to Central Lock-up.
ASSIGNMENT # 1:
In his first assignment of error, the defendant argues that the police officers had insufficient probable cause to stop his vehicle, therefore, his arrest was illegal as well as the subsequent search and seizure of the drugs found on the floor of his automobile. Relying on U.S. v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), this Court has held that a police officer who has probable cause to stop an automobile and make a warrantless arrest of the defendant could properly search all components of the vehicle or all containers in the vehicle that may have concealed contraband. State v. Caballero, 464 So.2d 939 (La.App. 4th Cir., 1985). Stopping an automobile and detaining its occupants constitutes a seizure within the meaning of the Fourth Amendment even though the purpose of the stop is limited and the result and detention is quite brief. Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); State v. Flowers, 441 So.2d 707 (La.1983). The initial inquiry in this case is whether the investigatory stop which led to the subsequent arrest and search of his automobile was valid.
The right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by La.C.Cr.P. art. 215.1, as well as by both state and federal jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Andrishok, 434 So.2d 389 (La.1983). Reasonable cause for such an investigatory stop is something less than probable cause and must be determined under the facts of each case by whether the officer had sufficient knowledge of the facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. The officer's right to make an investigatory stop and question the detained individual must be based upon reasonable cause to believe that he has been, is, or is about to be engaged in criminal conduct, and the "totality of the circumstances" must be considered in determining whether such reasonable cause exists. State v. Belton, 441 So.2d 1195 (La.1983).
In the instant case, the police officers had received a tip from a reliable informer that he had just witnessed drugs being sold at the corner of Olive and Eagle Streets. A physical description and clothing description of the seller was given, as well as a description of the seller's automobile. Shortly thereafter the officers observed an automobile matching the description parked at the corner of Olive and Eagle. The driver of the car likewise matched the description. The police officers observed what they believed to be an attempted drug transaction between the driver and an unknown subject. Under C.Cr.P. art. 215.1, the officers had a reasonable suspicion to believe that a crime had been committed or was about to be committed. Thus the stop of the defendant and the request for his driver's license was a valid investigatory stop. State v. Lee, 462 So.2d 249 (La.App. 4th Cir.1984); State v. Mayo, 450 So.2d 718 (La.App. 4th Cir. 1984), writ den. 452 So.2d 176 (La.1984). Failure of the appellant to produce a driver's license and the subsequent plain view discovery of the stolen gun ripened the officer's reasonable suspicion into probable cause for arrest. Once the arrest was effected, the officers were then justified in conducting the minimal search of the automobile and in opening the container containing *969 the drugs as incident to the arrest. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Under the Ross rationale, the officers had probable cause to arrest and search the appellant's vehicle even without the intervening arrests relative to the driver's license and the stolen weapon. See State v. Hernandez, 408 So.2d 911 (La.1981); State v. Johnson, 467 So.2d 47 (La.App. 4th Cir.1985); State v. Caballero, supra, citing Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Therefore, since the stop of the defendant was valid, the seizure of the evidence was also valid as the search was incident to a lawful arrest subsequent to the valid stop.
This assignment is without merit.
ASSIGNMENT # 2:Waived by Counsel in brief.
ASSIGNMENT # 3:[2]
Defendant asserts that it was not proven that he violated the conditions of his probation as set out in the probation list given to him at the time he was placed on probation. It was alleged that defendant violated his probation, as a result of failing to obey Conditions Number 3 and 9. Condition Number 3 was defendant's obligation to report to his probation officer every month. Mr. Greening, defendant's probation officer, testified that defendant violated this condition by failing to report to him in January, April, July, October and November of 1983, and January, April, May, August, September and October of 1984. Defendant himself acknowledged his failure to report but asserted that it was as a result of Mr. Greening's failure to contact him. We conclude that the state carried its burden of proving that defendant violated Condition Number 3.
Condition Number 9 was defendant's obligation to obtain permission from his probation officer before changing his address. In the case at hand, defendant had changed his address from 1923 Edinborough to General Ogden Street prior to obtaining permission. Defendant had testified that he had changed his address as a result of domestic problems, but it was not until after he had moved that he contacted his probation officer to notify him of his change of address. This court finds that the state did carry it's burden of proving that defendant violated Condition Number 9.
This assignment of error lacks merit.
ASSIGNMENT # 4:
In this assignment defendant asserts that the trial court erred in revoking defendant's probation, since the trial court revoked a sentence on July 12, 1984 and defendant was sentenced on July 12, 1982. It is apparent that either the sentencing judge or the Court reporter erroneously cited the year of the original sentence as 1984 instead of 1982. The record clearly establishes the correct date of the imposition of the original sentence. Although defendant has correctly pointed out this error in dates we fail to see how such error was prejudicial.
This assignment lacks merit.
Accordingly, for the above reasons the conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] This Court interprets the motion for appeal granted by the trial court on November 8, 1984 as a motion for an out-of-time appeal.
[2] This Court is aware that it does not possess appellate jurisdiction over this assignment of error. However, we choose to exercise our supervisory jurisdiction to address the merits of the defendant's argument. State v. Manuel, 349 So.2d 882 (La.1977); State v. Bradley, 445 So.2d 209 (La.App. 4th Cir.1984).