997 So.2d 718 (2008)
STATE of Louisiana
v.
Wesley YOUNG.
No. 2008-KA-0202.
Court of Appeal of Louisiana, Fourth Circuit.
October 29, 2008.
Mary Constance Hanes, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
Robert L. Freeman, Jr., District Attorney, Alyson Graugnard, Assistant District Attorney, New Orleans, LA, for the State/Appellee.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge TERRI F. LOVE, Judge ROLAND L. BELSOME).
PATRICIA RIVET MURRAY, Judge.
This is a criminal appeal. The defendant, Wesley Young, appeals his conviction and sentence. His sole assignment of error is that the trial court erred in denying his motion to suppress. For the reasons that follow, we affirm.

STATEMENT OF THE CASE
On November 20, 2006, Mr. Young was charged with possession of cocaine. On November 30, 2006, he entered a plea of not guilty. On February 15, 2007, the trial *719 court denied the motion to suppress the evidence and the motion to suppress the statement and found probable cause to hold Mr. Young for trial. On April 11, 2007, the jury found Mr. Young guilty as charged. On April 18, 2007, the State filed a multiple bill of information charging Mr. Young with being a second felony offender. On June 21, 2007, Mr. Young admitted to the allegations in the multiple bill of information. The trial court adjudicated him a second felony offender and sentenced him to serve thirty months at hard labor with credit for time served. This appeal followed.

STATEMENT OF THE FACTS
On July 4, 2006, at approximately 3:53 p.m., Officer Ron Zoller and his partner, Officer Roger Caillouet, were patrolling in a marked police unit when they observed a car driven by Mr. Young driving towards them.[1] Their attention was drawn to Mr. Young because the car he was driving had a crack in the windshield in the driver's line of vision and an expired brake tag. As the car turned into a gas station at the corner of Washington Avenue and Magazine Street, the officers further observed that the car had an expired license plate. Officer Caillouet, who was driving the police unit, entered the gas station and stopped in front of the car, which was parked by the gas pumps.
Officer Zoller approached the driver of the vehicle, Mr. Young, and Officer Caillouet approached the female passenger, Shemeka Vaughn Young (Mr. Young's wife). Officer Zoller asked Mr. Young for his driver's license, vehicle registration, and proof of insurance. He responded that he did not have any of the requested documents and that his driver's license was suspended. Officer Caillouet asked Ms. Young for her identification. She responded that she had none. Officer Zoller ordered Mr. Young to exit the vehicle. Mr. Young was handcuffed, placed under arrest, and informed of his Miranda rights. Officer Caillouet checked Mr. Young's name and vehicle identification number and confirmed that the vehicle was registered to Mr. Young and that he had a Louisiana Class "P" suspended license. The officers issued six citations to Mr. Young: a cracked windshield, an expired brake tag, an expired license plate, an expired registration, no proof of insurance, and driving with a suspended driver's license.
Officer Caillouet also checked Mrs. Young's name to see if she could be allowed to drive herself home and found that she did not have a driver's license. Because Ms. Young had no driver's license, she could not drive the car.
Officer Zoller entered the car to move it away from the gas pumps where it was blocking other customers. Inside the car between the front passenger seat and the console Officer Zoller saw in plain view a plastic bag of white powder believed to be consistent with cocaine and an unopened bag of hypodermic syringes and needles. The bag of cocaine was in plain view and within reach of both Mr. Young and his wife. Officer Zoller confiscated the cocaine, syringes and needles, informed both parties that they were under arrest for possession of cocaine, and informed them of their Miranda rights. Mr. Young then blurted out, "I am going to take my charge. I am going to take my charge. That's mine, it's not hers." Mr. Young signed a Rights of Arrestee form that stated that he agreed that the cocaine was his and not his wife's and that the car was his. Officer Caillouet denied that Mr. Young *720 and his wife were threatened that both would go to jail if one did not admit to possessing the cocaine. Ms. Young told Officer Zoller that she was five months pregnant, had developed diabetes, and that the syringes and needles were given to her by her doctor to treat her diabetes. The officers placed both Mr. Young and his wife in the police unit. The officers drove Ms. Young home and took Mr. Young to Central Lock Up. Neither officer saw Mr. Young buy, sell, hide, conceal, or discard any drugs before the traffic stop. Neither officer had any knowledge of how many other people drove or had access to the car besides Mr. Young.
The parties stipulated that Glen Gilyot, an expert in the examination and identification of cocaine, would testify that he examined the white powder at the New Orleans Crime Lab and that it tested positive for cocaine.
Ms. Young was the sole defense witness. She testified that on July 4, 2006, she and Mr. Young drove to a gas station to purchase cigarettes for Mr. Young's mother. As they were about to drive off, two police units drove up and blocked them in. She denied seeing any cocaine inside the car. She also denied having any knowledge that Mr. Young possessed any cocaine. She denied seeing Mr. Young hide, conceal, or discard any cocaine. She denied that the officers showed her the bag of cocaine at the gas station. She testified that a couple of people who work with Mr. Young also use the car. She also testified that the officers informed Mr. Young that if he did not sign the statement admitting to possessing the cocaine that they would also arrest her and take them both to jail. According to Ms. Young, Mr. Young did not sign the statement at the gas station, but rather he signed it in front of her home.
On cross-examination, Mrs. Young admitted that Mr. Young informed the officers that he had no driver's license, insurance, or registration papers. She further admitted to knowing that the brake tag and license plate were expired. She still further admitted that the officers informed her and Mr. Young at the gas station that the cocaine had been found inside the car. Then, in contradiction, she stated that they were not informed that cocaine had been found until the officers took her home.

ERRORS PATENT
A review for errors patent reveals none.

DISCUSSION
On appeal, Mr. Young contends that the trial court erred in denying his motion to suppress the evidence. He asserts that the warrantless search of the car was conducted in violation of the Fourth Amendment of the United States Constitution and Article I, § 5 of the Louisiana Constitution.[2] He contends that Officer Zoller violated his right to privacy by *721 not asking for consent to move the car and that, because he was handcuffed when Officer Zoller entered the vehicle, the seizure of the cocaine cannot properly be supported as a search for weapons and contraband incident to the arrest. Mr. Young further suggests the Louisiana Constitution offers greater protection against searches and searches and that a search of a vehicle incident to arrest for a traffic offense is insufficient without some additional factors contributing to either the officer's safety or probable cause to believe that evidence may be contained in the vehicle. Mr. Young still further argues that public policy considerations militate against allowing an arrest for a mere traffic offense that is based on the discretion of the police officer to justify a broad search of the driver's vehicle. Mr. Young thus seeks a reversal of the trial court's judgment denying the motion to suppress the evidence.
Searches and seizures outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable subject only to a few specifically established and well delineated exceptions. State v. Thompson, XXXX-XXXX (La.4/9/03), 842 So.2d 330; Coolidge v. New Hampshire, 403 U.S. 443, 454-455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971). Two of those exceptions are pertinent in this case: a search incident to a lawful arrest and the plain view exception.
This court recently discussed at length the authority of a police officer to search a vehicle incident to a defendant's arrest, even if the defendant was outside of the vehicle at the time of the arrest in State v. Jerome, 07-1243, pp. 3-4 (La.App. 4 Cir. 4/16/08), 983 So.2d 214, 261-217, stating:
Once a lawful arrest has been made, a warrantless search of the arrestee's person and the area within his immediate control is permissible in order to remove any weapons from his person and to prevent evidence from being destroyed.... [Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) ]. Thus, when the occupant of an automobile is arrested, the police may search the compartment of the automobile as a search incident to the arrest. New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). Police may also examine the contents of any containers found within the passenger compartment, whether open or closed, as the arrest justifies the infringement of any privacy interest the arrestee may have in the containers. Belton, 453 U.S. at 460, 101 S.Ct. 2860. The legality of the search is not dependent on the reasonable apprehension of the officer that he may be in danger or that evidence might be destroyed. Rather, so long as the former occupant of the vehicle was lawfully arrested and had been an occupant of that vehicle just prior to his arrest, the police officer may search the passenger compartment of the car and any containers therein. State v. Alaimo, 95-1044 (La.App. 4 Cir. 6/29/95), 657 So.2d 1102, 1104; see also State v. Roebuck, 530 So.2d 1242 (La. App. 4th Cir.1988), writ denied, 531 So.2d 764 (La.1988)(a search incident to arrest could encompass a search of the interior of the automobile when the arrestees remain in proximity to the car); State v. Caballero, 464 So.2d 939 (La. App. 4th Cir.1985)(upholding search pursuant to traffic stop of a tote bag in the trunk of the defendant's vehicle); State v. Smith, 489 So.2d 966 (La.App. 4th Cir.1986)(upholding search and opening of a container containing drugs incident to an arrest pursuant to traffic stop). The rationale in Alaimo is consistent with the recent United States Supreme Court decision in Thornton v. United States, 541 U.S. 615, 124 S.Ct. 2127, 158 *722 L.Ed.2d 905 (2004), wherein the Court held that "[s]o long as an arrestee is the sort of `recent occupant' of a vehicle such as petitioner here, officers may search that vehicle incident to the arrest." 541 U.S. at 623-624, 124 S.Ct. 2127. See also State v. Canezaro, XXXX-XXXX (La.6/1/07), 957 So.2d 136; State v. Hill, 99-1021 (La.App. 4 Cir. 9/8/99), 743 So.2d 773.
Given the jurisprudence cases cited above, the officers had the authority to search the car incident to Mr. Young's arrest because he had been a "recent occupant" of the car.
Mr. Young also cites in support of his position Knowles v. Iowa, 525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998), which held that an officer who stopped a motorist for speeding and issued him a citation rather than effecting an arrest did not have probable cause to search the motorist's vehicle. In this case, however, Mr. Young was cited for driving with a suspended license which calls for an arrest, not a citation. Furthermore, Louisiana cases have consistently followed the holding in Belton that when the occupant of a vehicle is arrested, the police may search the compartment of the vehicle as a search incident to the arrest. Accordingly, Officer Zoller did not need consent to enter the vehicle. Once inside the car Officer Zoller observed the cocaine in "plain view" between the front seat and the console.
As noted above, the plain view exception to the warrant requirement also supports the trial court's denial of the motion to suppress. For the plain view exception to apply three requirements must be met: (i) the police must have a prior justification for their intrusion into a protected area; (ii) the evidence must be discovered inadvertently; and, (iii) it must be immediately apparent, without close inspection, that the item is evidence or contraband. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Hall, 94-2051 (La.App. 4 Cir. 3/16/95), 652 So.2d 1086. Officer Zoller had a prior justification for entering the vehicle based on the arrest. He inadvertently came across a white powder in a clear plastic bag that was in plain view inside of the vehicle. It was immediately apparent to him that the powder was cocaine. Thus, the evidence could be seized.
Accordingly, the trial court correctly denied Mr. Young's motion to suppress the evidence.

DECREE
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.
BELSOME, J., dissents with reasons.
BELSOME, J., dissents with reasons.
Neither the majority opinion nor State v. Jerome  the authority upon which the majority relies  reconciles the decision in the instant case with the law of this circuit in State v. Tassin or the Louisiana Supreme Court's holding in State v. Zito. Therefore, I dissent.
This circuit has recognized that a well-settled exception to the warrant requirement is a search following a lawful arrest, and that pursuant to New York v. Belton, a search incident to arrest may cover the entire passenger compartment and any containers therein. State v. Tassin, 99-1692, p. 3 (La.App. 4 Cir. 3/15/00), 758 So.2d 351, 354. However, "because the justification of a search incident to arrest is the assurance of officers' safety, the search must generally be limited to the defendant's person or the area within his immediate control." Id.
*723 In Tassin, this Court held that a search of a vehicle after the Defendant had been arrested and handcuffed was unconstitutionally broad. Officers initially stopped the Defendant for disregarding a stop sign and not wearing a seat belt, and after running her name through the computer system, learned that there was an outstanding warrant for her arrest. The officers arrested and handcuffed her, then retrieved a purse from the center console near the driver's seat in the vehicle. Upon inspecting the purse, the officers discovered a crack pipe with residue and other drug paraphernalia.
In determining that the search of the Defendant's purse was unconstitutionally broad[1] because she was handcuffed and confined to the rear of the police car at the time of the search, the Court relied upon State v. Zito, 406 So.2d 167 (La.1981). In Zito, the Defendant and her boyfriend were in a vehicle conversing when both were arrested on outstanding warrants, then placed in the back of separate police cars. The officers subsequently searched the Defendant's vehicle and discovered a purse which contained narcotics. The State argued that the search was authorized because it was incident to a lawful arrest. The Court recognized that "a search incident to a lawful arrest is authorized for the purpose of protecting the arresting officer and is limited to a search of the person of the defendant and the area within his immediate control.
The Zito Court held that the search of the vehicle was not justified because neither Defendant nor her boyfriend posed a threat to the officers at the time of the search, as they were handcuffed in police cars, "and the searched area was not within their immediate control."[2]Tassin, 758 So.2d at 354 (quoting Zito, 406 So.2d at 168).[3]
In this case, Officer Zoller testified regarding the arrest of the Defendant as follows (emphasis added):
Q: Now, once you conducted the traffic stop or once you observed the violation, how did your investigation proceed?
A: As I said, we  we exited the police vehicle. I approached the driver's side, my partner approached the passenger side. At which time I asked Mr. Young for his driver's license, vehicle registration and insurance. He tells me, "I have none of that." So, I asked him if he had a driver's license. He said it was suspended. I ordered him out of the vehicle. And I said, "Okay, it was suspended, I have to place you under arrest." Placed him under arrest for driving on a suspended license and put him in handcuffs and advised him  verbally advised him of his Miranda rights.
Accordingly, at the time of the search, the Defendant had exited the vehicle and was handcuffed. With respect to the Defendant's wife, Officer Zoller testified as follows (emphasis added):

*724 Q: Now, after you obtained the Defendant's info, what if anything happened next?
A: Well, after I told him he was under arrest, brought him back to the police car at which time Officer Caillouet was running the name and so forth; ran his name, we found out that he did in fact have a Class "P" suspended license out of Louisiana. So, he was under arrest.
The female, of which Officer Caillouet tried to obtain I.D. from or driver's licenses, she had none either, as well. So, Officer Caillouet ordered her out of the vehicle and upon running her name, we found out that she did not have a driver's license and could not drive the car either.
The majority submits that "[t]he bag of cocaine was in plain view and within reach of both Mr. Young and his wife." While the bag was within reach of the Defendant and his wife at the time they occupied the vehicle, it was not within reach of either individual at the time of the warrantless search of the vehicle. Moreover, neither officer testified that he observed the narcotics prior to the Defendant and his wife exiting the vehicle; thus, the narcotics were not in plain view at the time of the initial traffic stop.
This writer would follow the reasoning of Zito and Tassin and find that the trial court erred in denying Defendant's motion to suppress in this case. I respectfully dissent.
NOTES
[1] The State's two witnesses at trial and at the hearing on the motion to suppress were Officers Zoller and Caillouet. The testimony of the two officers was essentially the same.
[2] The Fourth Amendment of the United States Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Similarly, the Louisiana Constitution protects a citizen's right to privacy; Article 1, § 5, Louisiana Constitution of 1974 provides:

Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court.
[1] Although this Court determined that the search of the Defendant's vehicle in Tassin was unconstitutionally broad, this Court ultimately held that the evidence was not entitled to suppression under the doctrine of inevitable discovery, as an inventory of the purse when it arrived at Central Lockup would have revealed the narcotics.
[2] As this Court noted in Tassin, Zito was decided approximately four months after New York v. Belton. Thus, the Court was presumably aware of Belton at the time Zito was handed down.
[3] This Court further held that "the search could not be justified under the exception for a vehicular inventory search because there was no indication that steps to impound defendant's vehicle were considered." Tassin, 758 So.2d at 354.